IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

RASHAAD THOMAS,
*Defendant*.

CRIMINAL No. ELH-18-0246

**MEMORANDUM OPINION**

Defendant Rashaad Thomas has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  ECF 84 ("Motion").  He also complains about the extent to which his sentence was reduced pursuant to Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  *See* ECF 88 ("§ 821 Motion").  The government opposes the Motion.  ECF 93.  It is supported by exhibits.  The government also opposes the § 821 Motion.  ECF 90.  Defendant filed a consolidated reply.  ECF 95.

No hearing is necessary to resolve the motions.  For the reasons that follow, I shall deny the motions.

**I.      Factual and Procedural Background**

On April 25, 2018, a federal grand jury returned a single-count indictment, charging Thomas with Carjacking, in violation of 18 U.S.C. § 2119(1).  ECF 1.  Pursuant to a Plea Agreement (ECF 60), Thomas pleaded guilty on June 14, 2021.  ECF 60.

The parties anticipated a base offense level of 20 under U.S.S.G. § 2B3.1(a).  They agreed that the base offense level was increased by three levels because a dangerous weapon was brandished.  *See* U.S.S.G. § 2B3.1(b)(3)(E).  In addition, two levels were added for the offense of carjacking, under § 2B3.1(b)(5).  And, two levels were added for "uncharged criminal conduct,"

pursuant to U.S.S.G. § 5K2.21.   After three deductions for acceptance of responsibility under § 3E1.1, the parties anticipated a final offense level of 24.  *See* ECF 60, ¶¶ 6(a)-6(e).

The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C).  *Id.* ¶ 9.  In particular, the parties agreed to a sentence ranging between 77 and 108 months of imprisonment.

The Plea Agreement contains a lengthy Stipulation of Facts.  *Id.* at 10-15.  According to the Stipulation, on October 21, 2017, the defendant forcibly entered a residence in Baltimore and demanded money and car keys from the two occupants.  *Id.* at 10.  As defendant exited the garage with the vehicle, he damaged the car, a 2016 Buick.  It was recovered the next day.  *Id.*  The Baltimore City Police recovered prints form the vehicle that matched the known prints of the defendant.  Cellular data also placed defendant's cellphone near the residence in issue at the time of the home invasion.  *Id.*  A BB gun that resembled the weapon used by defendant was recovered from him.  *Id.*

The Stipulation also indicates that defendant was a suspect in seventeen armed street robberies, home invasions, and carjackings between July and October 2017.  *Id.* at 10-15.  The crimes were described in some detail.  *Id.*  But, defendant did not admit it to those offenses.

Sentencing was held on August 26, 2021.  ECF 70.  Defendant was 32 years old at the time. ECF 66 ("Presentence Report" or "PSR").  In contrast to the Plea Agreement, the Presentence Report did not award a two-level enhancement for uncharged criminal conduct under § 5K2.21. Therefore, the PSR reflected that defendant had a final offense level of 22.  *Id.* ¶ 28.  Notably, the Court found a final offense level of 22, rather than 24, as contemplated by the parties in the Plea Agreement.  ECF 72 at 1.

With respect to criminal history, defendant had several prior offenses that did not score points, including a juvenile offense.  *Id.* ¶¶ 30, 32, 35.  The PSR reflected a total of six criminal

history points.  ECF 66, ¶ 36.  But, two points were added under U.S.S.G. § 4A1.1(d), because defendant committed the instant offense while on probation.  *Id.* ¶ 37.  That resulted in a score of eight points, establishing a criminal history category of IV.  *Id.* ¶ 38.

In 2007, at age 18, defendant was convicted of armed carjacking.  *Id.* ¶ 33.  He received a twenty-year sentence, of which eight years were suspended.  *Id.*  Then, in February 2019, he was found in violation of probation and received a sentence of four years.  *Id.*  In other words, the instant offense was defendant's second carjacking offense.

The Court determined that defendant had a criminal history category of IV.  With an offense level of 22, and a criminal history category of IV, this resulted in an advisory Guidelines range of 63 to 78 months of incarceration.  The Court sentenced defendant to 90 months of imprisonment, with credit for time served from October 27, 2017 to February 8, 2019.  ECF 71 (Judgment).  The sentence was imposed concurrent with defendant's State sentence.  *Id.*

Notably, if defendant were sentenced today, no status points would be added.  And, six criminal history points results in a criminal history category of III.  With an offense level of 22 and a criminal history category of III, the Guidelines are 51 to 63 months of incarceration.[1]

Defendant is currently incarcerated at USP McCreary in Kentucky.  He has a projected release date of December 27, 2025.  *See Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May 14, 2025).

Additional facts are included, *infra.*

---

[1] With an offense level of 24, and a criminal history category of IV, the Guidelines would have been 77 to 96 months of imprisonment.  With an offense level of 24, and a criminal history category of III, the Guidelines are 63 to 78 months.

## II.  Legal Standards

### A. Amendment 821

Section 3582(c)(2) of 18 U.S.C. permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 924(o)", if the amendment has been made retroactively applicable, and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; *see United States v. Barrett*, 133 F.4th 280 (4th Cir. 2025); *United States v. Moore*, 2024 WL 2828103, at *1 (4th Cir. June 4, 2024) (per curiam); *United States v. Riley*, ELH-13-0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range").

The Fourth Circuit has said that district courts must employ a two-step approach in considering 3582(c)(2) motions. *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016); *United States v. Williams*, 808 F.3d 253, 257 (4th Cir. 2015).  "First, a court must determine the defendant's eligibility.  Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2).  Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are

applicable.'" *Peters*, 843 F.3d at 574 (citing § 3582(c)(2)).[2] "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

Amendment 821 to the Guidelines went into effect on November 1, 2023. *Amendment 821*, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821. It "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024).

Part A of Amendment 821 pertains to criminal history and so called "status points." *Id.* It amended U.S.S.G. § 4A1.1 "by redesignating subsection (d) as subsection (e) and reducing the additional criminal history points assessed to a defendant who committed his offense while under a criminal justice sentence." *Moore*, 2024 WL 2828103, at *1; *see also Barrett*, 133 F.4th at 282-83. "Criminal justice sentence" under the Guidelines includes probation, parole, supervised release, imprisonment, work release or escape status. U.S.S.G. § 4A1.1(e).

Prior to the amendment, under U.S.S.G. § 4A1.1(d), two points were added to a defendant's criminal history score if the defendant committed the underlying offense while under a criminal justice sentence. But, as now codified in § 4A1.1(e), Amendment 821 limits the assignment of such "status points."

In particular, Amendment 821 permits the assignment of only one status point, and then only if a defendant has seven or more criminal history points. *See* U.S.S.G. § 4A1.1(e). In other words, the amendment eliminates any status points for a defendant who "has six or fewer criminal

---

[2] One policy statement provides that courts may not reduce a sentence "to a term that is less than the minimum of the amended guideline range" unless the defendant's original sentence resulted from a downward departure based upon substantial assistance to government authorities. U.S.S.G. § 1B1.10(b)(2); *see United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (concluding that § 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

history points." *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points.").

"The Sentencing Commission gave retroactive effect to the amended Guideline . . . beginning on February 1, 2024." *Moore*, 2024 WL 2828103, at *1; *see Barrett*, 133 F.4th at 283. So, under the new provision, U.S.S.G. § 4A1.1(e), only one "status point" is assessed, and only for those with seven or more criminal history points.

Part B provides for a decrease of two offense levels if ten conditions are met. *See* U.S.S.G. § 4C1.1(a). They are, *id.*:

> (**1**) the defendant did not receive any criminal history points from Chapter Four, Part A;
> (**2**) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> (**3**) the defendant did not use violence or credible threats of violence in connection with the offense;
> (**4**) the offense did not result in death or serious bodily injury;
> (**5**) the instant offense of conviction is not a sex offense;
> (**6**) the defendant did not personally cause substantial financial hardship;
> (**7**) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (**8**) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> (**9**) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
> (**10**) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

### B. Compassionate Release

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir.

2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because

the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276. In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step. Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with

9

applicable policy statements issued by the Sentencing Commission.'"  *United States v. Taylor*, 820

F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99

F.4th at 653–54.  The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term

of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement").  "[U]ntil recently," that

Policy Statement did not apply to motions filed by prisoners.  *Davis*, 99 F.4th at 654; *see McCoy*,

781 F.3d at 281.  The Policy Statement began: "Upon motion *of the Director of the Bureau of*

*Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."

U.S.S.G. § 1B1.13 (2021) (emphasis added).  Interpreting this language, the Fourth Circuit said in

*McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed

motions under § 3582(c)(1)(A)."  Therefore, on the basis of that earlier text, the Court held: "When

a defendant exercises his . . . right to move for compassionate release on his own behalf, . . .

§ 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain

the discretion of district courts."  *Id.* (citation omitted).  As a result, district courts were

"empowered . . . to consider any extraordinary and compelling reason for release that a defendant

might raise.'"  *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended.  *See Davis*, 99 F.4th at 654

(citing 88 Fed. Reg. 28254 (May 3, 2023)).  The Policy Statement now begins: "Upon motion of

the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the

court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).

Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A).

*Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments

in light of the Sentencing Commission's new policy statement outlining when and how to consider

changes in law as an extraordinary and compelling reason for a reduction").  As a result, when a

defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or
(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served

at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[3]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G.

---

[3] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

§ 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in

exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on

erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative.  The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6).  *Id.* at 654–55.  And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range."  *Id.* at 661.

According to the *Davis* Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison."  *Id.*  The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  It concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial."  *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III.    Discussion

### A.  Amendment 821

Thomas pleaded guilty to Count One of the indictment by way of a "C-plea" agreement.  ECF 60.  The Plea Agreement included a provision that Thomas's offense level is "increased by two levels because of uncharged criminal conduct, pursuant to U.S.S.G. § 5K2.21. . . ."  *See* ECF 60, ¶ 6(d).  Under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed that a sentence within the range of 77 to 108 months of imprisonment in the custody of the Bureau of Prisons was the appropriate disposition. ECF 60, ¶¶ 9, 10.

At sentencing, the Court did not apply the two-level enhancement under § 5K2.21, despite the parties' agreement.  Nevertheless, the Court sentenced Thomas to 90 months' imprisonment,

which was near the top of the advisory Guidelines range outlined in the Presentence Report and near the middle of the range in the "C-plea" agreement. *See* ECF 71.

On January 19, 2024, the Federal Public Defender's Office for the District of Maryland submitted a motion to reduce Thomas's sentence based on the retroactive application of Amendment 821 to the Guidelines. ECF 76.[4]  The government consented. *Id.*  The motion indicated that, based on Amendment 821, Thomas's criminal history score should be adjusted to account for the removal or reduction of "status points" and that the amended guideline range should be 51-63 months. *Id.*  Based on the original sentence and the adjusted Guidelines range under Amendment 821, the parties agreed that Thomas's sentence should be reduced from 90 months to 77 months of imprisonment. *Id.*  They reasoned that this is "a comparable term above the high end of [defendant's] amended Guideline range. *Id.*

This sentence was slightly above the adjusted advisory Guidelines range, not taking into account the provision contained in ¶ 6(d) of the Plea Agreement.  In particular, the motion to reduce sentence (ECF 76) did not include the two-level upward adjustment found in ¶ 6(d) of the Plea Agreement. But, the reduced sentence specified in the motion to reduce sentence (77 months) falls within the adjusted Guidelines range if the two-level adjustment is applied.  Specifically, with an offense level 24 and a criminal history category III, the Guidelines range is 63-78 months.

On January 22, 2024, the Court granted Thomas's motion to reduce sentence.  ECF 82. Defendant's sentence was reduced from 90 months to 77 months of imprisonment. *Id.*

Defendant now asks the Court to review and reconsider.  ECF 88.  But, Thomas's sentence was reduced in proportion to his original sentence.  Counsel factored in the Guidelines calculation to which the parties had agreed in the Plea Agreement and arrived at an equitable reduction to

---

[4] Defendant filed a pro se motion to reduce his sentence on January 18, 2024.  ECF 80.

Thomas's sentence based on Amendment 821. The government asserts that "no further adjustment is warranted in this matter." ECF 90 at 2. I agree.

To be clear, defendant was identified as a suspect in multiple serious offenses. He conceded that he was a suspect. Under the terms of the Plea Agreement, however, defendant did not admit that he committed those crimes. But, he expressly agreed to a two-level upward adjustment on that basis.

At sentencing, I chose not to assign the two-level upward adjustment on that basis. But, that decision did not foreclose the Court, under the C plea, from imposing a sentence within the C plea range. I imposed a sentence that, in my view, was reasonable in light of all the sentencing factors.

Thereafter, defendant's sentence was reduced pursuant to Amendment 821. As I see it, no further reduction is warranted based on Amendment 821.

### B. Compassionate Release

The government urges the Court to deny defendant's Motion because he failed to pursue administrative remedies with the BOP by first presenting his request to the Warden before seeking judicial relief. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Mohammad*, 16 F.4th 126, 129 (4th Cir. 2021).

Pursuant to 18 U.S.C. § 3852(c)(1)(A), "[t]he court may not modify a term of imprisonment once it has been imposed" except "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden, whichever is earlier." The Fourth Circuit has said that the "so called exhaustion requirement" is a "non-jurisdictional claim-processing rule,"

*Muhammad*, 16 F.4th at 129, which may be waived.  *Id.* at 130.  Although a defendant's failure to "exhaust" does not strip the court of jurisdiction, the threshold requirement remains a mandatory claim-processing rule that must be enforced when raised by the government.  *See id.*; *United States v. Houck*, 2 F.4th 1032, 1084 (8th Cir. 2021).

According to the government, inquiry to the BOP and the staff at USP Canaan, where Thomas was apparently housed when he filed the Motion, contains no record of Thomas filing an administrative request for relief.  ECF 93 at 5; ECF 93-2.  Accordingly, the government maintains that Thomas's Motion should be denied because he has failed to comply with the exhaustion requirement.  Given that defendant's Motion has been pending since March of 2024, I shall assume, *arguendo*, that he has exhausted.

Thomas asserts that his request for compassionate release should be granted due to his medical conditions.  He claims that he had COVID-19 on two occasions and is now "coping with 'long-covid' symptoms" that include shortness of breath, loss of taste and smell, high blood pressure, and back paid.  ECF 84 at 1.  He also claims that his conditions have been ignored by BOP.  *Id.*

In addition, Thomas states that he has "done programs" and "worked in food service."  *Id.*  Therefore, he is "'throwing [him]self' at the court's mercy. . . ."  *Id.*

The government contends that defendant's medical conditions do not justify compassionate release.  ECF 93 at 5-7.

U.S.S.G. § 1B1.13(b)(1) is titled "Medical Circumstances of the Defendant."  Thomas does not identify any provision(s) that he claims apply to him.  But, his circumstances appear to implicate U.S.S.G. §§ 1B1.13(b)(1)(B), (C), which provide that an extraordinary and compelling reason for compassionate release exists if:

**(B)** The defendant is—

>    **(i)** suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

Thomas's medical records reflect that he was infected with the COFID-19 virus twice while incarcerated. But, the records also reflect that he recovered without incident. *See* ECF 93-2. For example, Thomas denied that he had shortness of breath, headaches, or other symptoms. *See id.* at 7, 85, 91, 99-103, 105-107. In sum, there is no indication in the medical record that Thomas had any complications from his COVID-19 infections.

In addition, Thomas's medical records reflect that he was diagnosed with hypertension. But, his hypertension is being monitored and controlled by medications. *Id.* at 1-9.

Based on the medical records, Thomas's hypertension and other alleged medical conditions do not rise to the level of "extraordinary and compelling." Thomas was infected with the COVID-19 virus in 2020 and 2021, but he fully recovered and had minimal symptoms. It appears from his medical records that he was vaccinated with the COVID-19 vaccine, but he has refused subsequent booster vaccines. *See id.* at 56, 77, 81, 83, 85, 87, 89, 91, 93, 115. Moreover, his hypertension is being monitored and treated.

In sum, there is nothing in the record to suggest that Thomas's medical condition places him at any risk if he remains incarcerated.

Even assuming that defendant has established an extraordinary and compelling reason for compassionate release, that finding would not end the inquiry. The Court must next consider the sentencing factors in 18 U.S.C. § 3355(a). These include: (1) the nature of the offense and the

defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Defendant's crime was extremely serious. It simply is not acceptable for an individual to invade a residence, with a weapon, and forcefully take property from two elderly people. As I see it, a further reduction of defendant's sentence would not promote respect for the law.

The second § 3553(a)(1) factor—defendant's personal history—is also troubling, and weighs against immediate release or further reduction of sentence. Defendant's prior interaction with the criminal justice system did not deter him from engaging in the serious criminal conduct that culminated in his prosecution in this case. In particular, this was defendant's second carjacking offense. Previously, he received a lengthy sentence, violated his probation, and again received a serious sentence. None of this deterred defendant from reoffending.

In his Motion, Thomas relies on his rehabilitation to support his request for relief, focusing on his work history and good conduct while in the custody of the BOP to establish "extraordinary and compelling reasons." ECF 84 at 1-2.

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when

the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, rehabilitation alone does not warrant a defendant's immediate release. *See United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) ("[R]ehabilitation alone cannot constitute an extraordinary and compelling reason for release.").

Where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); *Kibble*, 992 F.3d at 334 n.3. Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The court must "at least weigh the [defendant's] conduct in the years since the[] initial sentencing[]." *McDonald*, 986 F.3d at 412; *see Martin*, 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts). A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

Defendant has made efforts to rehabilitate himself. This is commendable. But, in my view, defendant's efforts at rehabilitation do not justify compassionate release.

## IV.  Conclusion

For the foregoing reasons, I shall deny the Compassionate Release Motion (ECF 84) and the 821 Motion (ECF 88).  An Order follows.


Date:  May 27, 2025                              _____/s/_____
                                                 Ellen Lipton Hollander
                                                 United States District Judge